# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **PSEG RENEWABLE TRANSMISSION LLC** | |
| *Petitioner,* | |
| v. | **Civil Action No.** 1:25-cv-03352-ABA |
| **BELFAST FARMS, LLC,** *et al.*, | |
| *Respondents.* | |

## RESPONDENTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Respectfully submitted,

*/s/ Harris W. Eisenstein*
Harris W. Eisenstein (Fed. Bar No. 29694)
David M. Wyand (Fed. Bar No. 23413)
Lauren M. McLarney (Fed. Bar No. 20982)
Rosenberg Martin Greenberg, LLP
25 S. Charles Street 21st Floor
Baltimore, Maryland 21201
Phone: (410) 727-6600
Fax: (410) 727-1115
heisenstein@rosenbergmartin.com
dwyand@rosenbergmatin.com
lmclarney@rosenbergmartin.com

*Attorneys for Respondents*

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ................................................................................2

III. LEGAL STANDARD ..........................................................................................4

IV. ARGUMENT .......................................................................................................4

    A.  PSEG Does Not Have The Power of Eminent Domain ......................................4

        i.        Based on the plain language of RP § 12-111 and PU § 7-207, PSEG has no pre-condemnation access authority ...............................................................5

        ii.      PPRP's asserted need for information does not justify extending RP § 12-111 to entities that do not have the power of eminent domain ........................................10

        iii.     Principles of statutory construction dictate that RP § 12-111 may not be invoked by an entity that does not have the power of eminent domain, regardless of an asserted need to access properties ...........................................................12

        iv.     The reference to future public use in RP § 12-111 does not indicate that PSEG has the power of eminent domain ...............................................................15

        v.       PSEG is not an agent of PPRP, DNR, or any other State agency .........................17

        vi.     Federal law cannot give PSEG the power of eminent domain .............................18

        vii.    The Maryland Circuit Court opinion in *Transource* does not support PSEG's interpretation ...........................................................................19

        viii.   Cases from other jurisdictions do not support PSEG's interpretation of the Maryland statute....................................................................20

    B.  This Court Should Decline to Exercise Jurisdiction Under *Burford v. Sun Oil, Co.*, Because Whether PSEG Has The Power of Eminent Domain (And Thus, Access Rights Under RP § 12-111) Is A Complex Question of State Law................................................22

    C.  This Case Should Also Be Dismissed For Failure to Join A Necessary Party Under Fed. R. Civ. P. 12(b)(7) ...........................................................................25

V. CONCLUSION ...................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................................4

*Barr v. Atl. Coast Pipeline, LLC*,
  295 Va. 522, 815 S.E.2d 783 (2018)..............................................................................20, 21

*Bath Mem'l Hosp. v. Maine Health Care Fin. Comm'n*,
  853 F.2d 1007 (1st Cir.1988)..........................................................................................22

*Berkley v. Mountain Valley Pipeline, LLC*,
  896 F.3d (4th Cir. 2018)…………………………………………………………………..9

*Broadway Servs., Inc. v. Comptroller of Maryland*,
  478 Md. 200 (2022) ........................................................................................................17

*Burford v. Sun Oil Co.*,
  319 U.S. 315 (1943).................................................................................................. Passim

*Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*,
  636 F.3d 101 (4th Cir. 2011) ........................................................................................26

*City of Baltimore Dev. Corp. v. Carmel Realty Assocs.*,
  395 Md. 299 (2006) ........................................................................................................17

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976).......................................................................................................23

*Davis v. Bd. of Educ. of Anne Arundel Cnty.*,
  166 Md. 118 (1934) ........................................................................................................14

*E. Tennessee Nat. Gas Co. v. Sage*,
  361 F.3d 808 (4th Cir. 2004)…………………………………………………………….7

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) ........................................................................................4

*Grode v. Mut. Fire, Marine & Inland Ins. Co.*,
  8 F.3d 953 (3d Cir. 1993)...............................................................................................24

*Goines v. Valley Cmty. Servs. Bd.*,
  822 F.3d 159 (4th Cir. 2016) ........................................................................................4

*Johnson v. Collins Ent. Co.*,
   199 F.3d 710 (4th Cir. 1999) ........................................................................22, 23

*King v. Mayor & Council of Rockville*,
   52 Md. App. 113 (1982) ..............................................................................5, 14

*La. Power & Light Co. v. City of Thibodaux*,
   360 U.S. 25 (1959)....................................................................................23, 24

*Mackie v. Mayor and Com'rs of Town of Elkton*,
   265 Md. 410 (1972) ..................................................................................10, 12

*Martin v. Stewart*,
   499 F.3d 360 (4th Cir. 2007) ...........................................................................22

*Mayes v. Rapoport*,
   198 F.3d 457 (4th Cir. 1999) ...........................................................................26

*McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*,
   373 U.S. 668 (1963)........................................................................................25

*MLC Auto., LLC v. Town of S. Pines*,
   532 F.3d 269 (4th Cir. 2008) ......................................................................22, 23

*Moore v. State*,
   88 Md. 446 (2005) ............................................................................................8

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*,
   210 F.3d 246 (4th Cir. 2000) ..........................................................................27

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
   491 U.S. 350 (1989)........................................................................................22

*New Prime Inc. v. Oliveira*,
   586 U.S. 105 (2019)........................................................................................14

*New York v. F.E.R.C.*,
   535 U.S. 1 (2002)............................................................................................25

*Nexus Gas Transm., L.L.C. v. Sprague*,
   2016-Ohio-4901, 2016 WL 3654532 (Ohio App. 2016) .......................................21

*Palmer v. Atl. Coast Pipeline, LLC*,
   293 Va. 573, 801 S.E.2d 414 (2017)............................................................18, 19

*Potomac Elec. Power Co. v. Birkett*,
217 Md. 476 (1958)……………………………………………………………...….8

*Potomac Elec. Power Co. v. Montgomery Cnty.*,
80 Md. App. 107 (1989) ..................................................................................23, 25

*Prop. Rsrv., Inc. v. Superior Ct.*,
1 Cal. 5th 151, 375 P.3d 887 (2016) ....................................................................21

*PSEG Renewable Transmission LLC v. Arentz Fam., LP*,
No. 25-CV-1235-ABA, 2025 WL 1725814 (D. Md. June 20, 2025) ............................ Passim

*Public Util. Comm'n of Ohio v. United Fuel Gas Co.*,
317 U.S. 456 (1943)......................................................................................22, 23

*Rucci v. Cranberry Twp., Pa.*,
130 F. App'x 572 (3d Cir. 2005) ..........................................................................24

*Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins, LLC*,
412 Md. 308 (2010) ............................................................................................14

*Scriber v. State*,
437 Md. 399 (2014) ............................................................................................12

*Teamsters Local Union No. 171 v. Keal Driveaway Co.*,
173 F.3d 915 (4th Cir. 1999) ..............................................................................27

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996)............................................................................................23

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) ..............................................................................4

**Statutes**

15 U.S.C. § 717a…………………………………………………………………….20

15 U.S.C. § 717f(h)………………………………………………………………..7, 9

16 U.S.C. § 824(a) .......................................................................................19, 25

16 U.S.C. § 824p.................................................................................................7

28 U.S.C. § 1332(a)(1)........................................................................................26

Md. Code Ann., Nat. Res. § 3-305................................................................11, 13, 15

Md. Code Ann., Nat. Res. § 3-306.................................................................10, 11, 12, 13, 18

Md. Code Ann., Pub. Util. § 1-101(i) ..............................................................................7, 20

Md. Code Ann., Pub. Util. § 7-207 ...............................................................................Passim

Md. Code Ann., Real Prop. § 12-111 ............................................................................Passim

Ohio Rev. Code Ann., § 1723.01 ........................................................................................21

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).......................................................................................................1, 4

Fed. R. Civ. P. 12(b)(7).................................................................................................Passim

Fed. R. Civ. P. 19 .......................................................................................26, 27, 28, 29

FERC Order No. 1000, *Final Rule, Transmission Planning and Cost Allocation
by Transmission Owning and Operating Public Utilities* ...................................19, 25

Respondents,[1]  by and through their undersigned counsel, hereby file this memorandum in support of their Motion to Dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) and under the *Burford* abstention doctrine.

## I.        INTRODUCTION

In this case, PSEG Renewable Transmission LLC ("PSEG") seeks for the third time to use the power of this Court to force numerous private landowners to grant PSEG extensive rights to enter and remain on their private land with only 24 hours' notice, with this right lasting likely more than a year. PSEG claims it possesses the State's power of eminent domain but cannot point to any statute delegating the power of eminent domain to a private company that has not already received a certificate of public convenience and necessity ("CPCN") from the Maryland Public Service Commission ("PSC") to construct overhead transmission lines within the State.[2] For that reason, PSEG has failed to state a claim.

For that same reason, the Court should decline to exercise jurisdiction under the *Burford* abstention doctrine. Whether PSEG has the power of eminent domain turns entirely on whether PSEG has a CPCN, and the PSC has exclusive jurisdiction under Maryland's regulatory scheme to answer that question. Because PSEG also seeks to embroil this Court in issues that presently are pending before the expert regulatory body tasked with this same matter, this Court should abstain.

Lastly, PSEG has again cherry-picked the Respondents in order to avoid other landowners with property along the proposed route, because they are residents of New Jersey and their inclusion would destroy diversity jurisdiction. PSEG has previously indicated it cannot pursue the

---

[1] For ease of reference, the term Respondents refers to the 29 landowners represented by undersigned counsel as well as the other landowners sued in this action.

[2] When the Court previously considered the motions to dismiss in two earlier, related cases, it was not yet known when the PSC would decide whether to issue a CPCN to PSEG. Since then, the PSC has made clear that it will not make that decision before February 2027.

project piecemeal, yet now it has filed a third action without all necessary parties, in a forum where it cannot get complete relief. Equitable principles cannot excuse PSEG's third nonjoinder.

## II.    FACTUAL BACKGROUND

PSEG is a New Jersey entity that has applied for a CPCN with the PSC to build a project known as the Maryland Piedmont Reliability Project ("MPRP"). ECF 1 at ¶ 1. The MPRP is a proposed 67-mile, 500 kilovolt ("kV") aboveground power line project running through Baltimore, Carroll, and Frederick Counties. *Id.* The proposed route cuts through 409 private properties. Routing Study, Appendix F, attached as **Exhibit 1**, filed with CPCN Application on 12/31/2024 ("Unique property owners within ROW (count) 409").

Beginning in October 2024, PSEG and Contract Land Staff ("CLS") agents began efforts to contact landowners along the proposed route, including Respondents, and obtain their consent to enter their land for the purposes of conducting certain field surveys. *See* ECF 1 at ¶¶ 248, 249; ECF 3. Respondents were among the landowners contacted. *See*, *e.g.*, ECF 4 at ¶ 6.

On December 31, 2024, PSEG filed its Application for a CPCN with the PSC. ECF 1 at ¶¶ 2, 213. As of October 31, 2025, PSEG and other interested parties had made over 600 filings in the PSC proceeding. *In re Application of PSEG Renewable Transmission LLC*, Case No. 9773 (Md. Pub. Serv. Comm'n 2024).[3] To date, no CPCN has been issued in the PSC proceeding, and the PSC will not decide whether to grant a CPCN before February 2027. *See* ECF 3-8. The PSC's Order Establishing Procedural Schedule for the MPRP, issued on September 11, 2025, ECF 3-8, makes certain what was virtually certain when this Court denied the motions to dismiss in the cases captioned *PSEG Renewable Transmission LLC v. Arentz Family, LP*, No. 25-CV-1235-ABA

---

[3] The PSC docket in the case is available on the PSC's website: https://webpscxb.psc.state.md.us/DMS/case/9773

("*Arentz*") and *PSEG Renewable Transmission LLC v. Alvi Properties, LLC, et al.*, 25-CV-2296-ABA ("*Alvi*"): PSEG cannot meet its in-service contractual deadline with PJM.

On March 26, 2025, the Power Plant Research Program ("PPRP") of the Maryland Department of Natural Resources ("DNR") filed comments with the PSC asserting that PSEG's CPCN application was incomplete. ECF 1 at ¶ 219. PPRP asserted that the application lacked, among other things, "sufficient summary of the environmental and socioeconomic effects from the construction and operation of the Project, including field studies" such as "wet land delineations, forest stand delineations, geotechnical surveys, sensitive species project review area surveys, and surveys required by the Maryland historical Trust." ECF 3 at ¶ 20. PSEG disputed PPRP's assertion multiple times, but the PSC has not yet ruled on whether PSEG's application is complete.

In April 2025, PSEG sued 117 landowners in *Arentz* seeking an order granting PSEG the right to enter each of their properties for purposes of conducting surveys. After substantial briefing and oral argument, the district court entered a preliminary injunction on June 20, 2025, which granted PSEG the access rights it sought. The district court then entered an Amended Preliminary Injunction on July 11, 2025. Certain *Arentz* respondents appealed those orders, which is pending.

On July 15, 2025, PSEG sued 201 landowners in *Alvi* similarly seeking an order granting PSEG the right to enter those properties to conduct surveys. Again, after extensive briefing, the district court entered a preliminary injunction. Certain *Alvi* Respondents noted an appeal in that action on September 17, 2025, which is also pending.

PSEG could have joined the 98 Respondents from the instant case to *Arentz* or *Alvi* but elected not to. Instead, on October 9, 2025, PSEG filed the instant action, seeking access to the properties owned by the 98 named Respondents.

### III.    LEGAL STANDARD

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While a 12(b)(6) motion focuses on the allegations of the complaint, it is well established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was 'integral to the complaint and authentic.'" *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting *Sec'y of State For Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). Moreover, "courts at any stage of a proceeding may judicially notice a fact that is not subject to reasonable dispute, provided that the fact is generally known within the court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).

Rule 12(b)(7) of the Federal Rules of Civil Procedure provides that a party may raise by motion before answering a complaint "failure to join a party under Rule 19."

### IV.    ARGUMENT

#### A.  PSEG Does Not Have the Power of Eminent Domain.

This case must be dismissed because PSEG's sole claim for relief is not available to PSEG under Section 12-111 of the Real Property Article ("RP § 12-111"). Under the plain language of Section 7-207 of the Public Utilities Article ("PU § 7-207"), a private transmission line developer only has the power of eminent domain "[o]n issuance of a certificate of public convenience and

necessity." PU § 7-207(b)(3)(v). PSEG does not have a CPCN, is not an entity "having the power of eminent domain" and has no access rights granted by the statute.

### i. Based on the plain language of RP § 12-111 and PU § 7-207, PSEG has no pre-condemnation access authority.

PSEG is demanding access to the Respondents' private properties even though it does not have the power of eminent domain. The Maryland statute PSEG seeks to invoke is clear, and it does not apply to PSEG:

> Civil engineers, land surveyors, real estate appraisers, and their assistants acting on behalf of the State or of any of its instrumentalities or any body politic or corporate *having the power of eminent domain* after every real and bona fide effort to notify the owner or occupant in writing with respect to the proposed entry may:
>
> (1) Enter on any private land to make surveys, run lines or levels, or obtain information relating to the acquisition or future public use of the property or for any governmental report, undertaking, or improvement;
>
> (2) Set stakes, markers, monuments, or other suitable landmarks or reference points where necessary; and
>
> (3) Enter on any private land and perform any function necessary to appraise the property.

RP § 12-111(a) (emphasis added).

The power of eminent domain is a sovereign power of the State of Maryland wielded by the General Assembly. *King v. Mayor & Council of Rockville*, 52 Md. App. 113, 122 (1982) (power of eminent domain "resides in the Legislature, and may either be exercised by the Legislature or delegated by it to public officers") (quoting *Rindge Co. v. Los Angeles Cnty.,* 262 U.S. 700, 709 (1923)). An entity cannot have the power of eminent domain unless the legislature has delegated the power.

PSEG can point to no statute in which the General Assembly delegated the power of eminent domain to PSEG, because none exist. For a private company seeking to operate an

overhead transmission line in Maryland, like PSEG, the only possible source of delegated eminent domain authority is found in the Maryland statute relating to a CPCN, codified at PU § 7-207. The statute, however, grants the power of eminent domain only to those who have already been issued a CPCN. Subparagraph (b)(3)(v) provides:

> 1. This subparagraph applies to the construction of an overhead transmission line for which a certificate of public convenience and necessity is required under this section.
>
> 2. *On issuance* of a certificate of public convenience and necessity for the construction of an overhead transmission line, a person may acquire by condemnation, in accordance with Title 12 of the Real Property Article, any property or right necessary for the construction or maintenance of the transmission line.

(Emphasis added).

Only subparagraph (b)(3)(v) *grants* eminent domain power. The language used in subparagraph (v) – "may acquire by condemnation, in accordance with Title 12 of the Real Property Article" – is the identical language used throughout the Public Utilities Article to grant eminent domain authority to other public utilities natural gas companies, oil pipeline corporations, telephone & telegraph companies, water companies and railroads. PU § 5-403(b) (gas companies "may acquire by condemnation, in accordance with Title 12 of the Real Property Article," property necessary for pipelines); § 5-404(b) (oil pipeline corporations "may acquire by condemnation, in accordance with Title 12 of the Real Property Article," property necessary for pipelines); § 5-410(b) (telephone & telegraph companies "may … acquire by condemnation, in accordance with Title 12 of the Real Property Article," property necessary for their purposes); § 5-411 (water companies "may acquire by condemnation, in accordance with Title 12 of the Real Property Article," under specified circumstances); §§ 5-405(b) (railroads "may acquire the property by

condemnation under Title 12 of the Real Property Article" for construction of railroads).[4] All of these other public utilities rely on this same grant language in order to use eminent domain in their various projects.

The other subparagraphs of the PU § 7-207 do not contain any such grant. Subparagraph (b)(3)(i) imposes a *limit* on condemnation power – not a grant – flatly prohibiting both construction of overhead lines and the exercise of condemnation power unless a CPCN is first obtained from the PSC. This provision says nothing about how a person could be granted the power of eminent domain in the first instance..

Subparagraph (b)(3)(iii)[5] merely identifies the entities to which the PSC may grant a CPCN, that is, those entities that are eligible to apply. Subparagraph (iii) does not contain a grant of eminent domain authority and does not even mention eminent domain or condemnation. The mere expansion of potential applicants to construct an overhead transmission line does not include a grant of eminent domain power.. Only subparagraph (b)(3)(v) contains a *grant* of eminent domain power, and that grant is only "[o]n issuance of a [CPCN]."

That subparagraph (b)(3)(v) is the only possible delegation of eminent domain power for a private transmission line developer is confirmed by the legislative history of PU § 7-207. Prior to 2015, a CPCN for overhead transmission lines was only available to an electric company, defined as one "who physically transmits or distributes electricity in [Maryland] to a retail electric customer." Md. Code Ann., Pub. Util. § 1-101(i). In a 2015 amendment, the General Assembly for

---

[4] Similarly, Congress, provided in the Federal Power Act that, within a "national interest electric transmission corridor" (not implicated in this case), "the permit holder may acquire the right-of-way by the exercise of the right of eminent domain…." 16 U.S.C.A. § 824p(e)(1). In the Natural Gas Act, Congress provided that a gas company holding a CPCN "may acquire [property] by the exercise of the right of eminent domain …." 15 U.S.C.A. § 717f(h). This Court has explained that § 717f(h) "gives a gas company the power to acquire property by eminent domain." *E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 818 (4th Cir. 2004).
[5] Subparagraph (b)(3)(ii) relates to existing transmission lines, has no relevance to this case, and is not otherwise quoted or cited by PSEG in its brief.

the first time permitted private developers to apply for a CPCN, adding the language currently in PU § 7-207(b)(3)(iii)(2), which permits applications by an entity that "on the start of commercial operation of the overhead transmission line, will be subject to regulation as a public utility by an officer or an agency of the United States." This amended language, however, *did not grant* the power of eminent domain to these private developers.[6] For that reason, the General Assembly in 2017 found it necessary to amend PU § 7-207 again to add the language quoted above in PU § 7-207(b)(3)(v). The language of the amended statutory text makes clear that the power of eminent domain is delegated only "[o]n issuance of a [CPCN]." PU § 7-207(b)(3)(v).

PSEG has improperly treated as meaningless both the fact of the 2017 amendment and the statutory text in PU § 7-207(b)(3)(v) that was added by the amendment. *Moore v. State*, 388 Md. 446, 453 (2005) ("We construe a statute as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory."). Not once in the Petition (ECF 1) or in the Motion for Preliminary Injunction (ECF 65) did PSEG mention the language in PU § 7-207(b)(3)(v) that grants eminent domain power "[o]n issuance of a [CPCN]." Willful disregard, however, cannot avoid the import of the plain language of the statute.

The purpose statement of 2017 Senate Bill 969 confirms that the 2017 amendment to PU § 7-207 was passed for "the purpose of authorizing a person to which a certain certificate of public convenience and necessity is issued" to acquire property by condemnation. **Exhibit 2** (2017

---

[6] PSEG has improperly attempted to place itself in the same category as electric companies with respect to grants of eminent domain power. This ignores the fact that electric companies historically were given eminent domain authority in franchises granted by the State. For example, in *Potomac Elec. Power Co. v. Birkett*, 217 Md. 476 (1958), the Maryland Supreme Court (then the Court of Appeals) noted that "Pepco [an electric company] succeeded to the franchises and all of the rights of Great Falls [a predecessor electric company]," and, therefore, "it acquired the right of eminent domain throughout Maryland." *Id*. at 483. This right came from the franchise, not from a codified statute. PSEG and other private transmission line developers have never had such franchises in Maryland and therefore do not have the power of eminent domain that is often granted in such franchises. In its comments on the 2017 amendment to PU § 7-207, the PSC confirmed that "[e]lectric companies already have underlying condemnation authority granted to them from the State outside of the CPCN statute," while private transmission line developers did not. **Exhibit 3** at 1.

Maryland Laws Ch. 840 (S.B. 969)). The bill file for 2017 Senate Bill 969 contains comments from the PSC – the commission charged with administering the statute – providing its views on what the bill would accomplish. The PSC described the purpose of the bill as follows: "SB 969 would amend the [PU] Article by authorizing a person *who has received* a certificate of public convenience and necessity ('CPCN') from the [PSC] for the construction of a transmission line to acquire condemnation rights in conjunction with that CPCN, subject to Commission approval."

**Exhibit 3** at 1 (emphasis added). The PSC further explained that a previous 2015 amendment expanded the CPCN statute "to apply to persons other than incumbent electric companies." *Id*. According to the PSC, while electric companies already had "underlying condemnation authority granted to them from the State outside of the CPCN statute," entities that were not electric companies "most likely would not have that authority." *Id*. The PSC explained that the 2017 bill "would close the apparent gap in statutory authority from 2015 by allowing the [PSC] *to grant* the right of condemnation to a person *who has obtained* a CPCN for the construction of an overhead transmission line," and that "[i]f the [PSC] decided to grant such rights, the [PSC] would grant them *in conjunction with* the underlying CPCN." *Id*. at 2 (emphasis added). Thus, the PSC viewed the 2017 amendment as giving the PSC the authority to grant the power of eminent domain at the same time that it issued the CPCN, not before and not after.[7]

The *issuance* of the CPCN, therefore, is the event that confers the State's power of eminent domain on a private transmission line developer. It is not one of numerous "conditions precedent" to exercising some pre-existent power of eminent domain, as PSEG claims. ECF 65-1 at 17. Rather,

---

[7] What the General Assembly provided in the 2017 amendment is similar to the mechanism created by Congress under the NGA, in which the delegation of eminent domain power is made only to a "holder of a [CPCN]." 15 U.S.C. § 717f(h). Interpreting this grant, this Court has observed: "Issuing such a Certificate [CPCN] conveys and automatically transfers the power of eminent domain to the Certificate holder. *Berkley v. Mountain Valley Pipeline, LLC*, 896 F.3d 624, 628 (4th Cir. 2018). Thus, the grant of the power of eminent domain goes with the issuance of a CPCN. The grant made by the General Assembly in PU § 7-207(b)(3)(v) operates the same way. Under both the NGA and the Public Utilities Article, only holders of a CPCN have the power of eminent domain.

the issuance of the CPCN *is* the grant of the power of eminent domain in the first instance. Prior to the issuance of a CPCN, a private transmission line developer has no power of eminent domain. Neither PU § 7-207 nor any other law provides eminent domain power to a private entity for the construction of overhead transmission lines *prior to* the issuance of a CPCN. PSEG has not been issued a CPCN and, therefore, has no power of eminent domain under Maryland law.

### ii. PPRP's asserted need for information does not justify extending RP § 12-111 to entities that do not have the power of eminent domain.

PSEG also argues that, because Md. Code Ann., Nat. Res. ("NR") § 3-306 requires PPRP to complete certain assessments during the CPCN review process, RP § 12-111 must be interpreted to permit PSEG to gather all information required for those assessments before any CPCN is issued. ECF 65-1 at 23. PSEG's interpretation hinges entirely on its assertion that the statutes, when interpreted based on the ordinary meaning of the words used, would be "unworkable." This argument is based on the presumption that the law requires PSEG to provide certain information to PPRP and that PPRP has no other mechanism to obtain this information during the CPCN application process. *See, e.g.,* ECF 65-1 at 17-18 (asserting that "[n]one of this information … could be gathered").

PSEG's presumption, however, is false as a matter of law because the General Assembly has provided a way for PPRP to gather[8] the information it needs to accomplish the required

---

[8] Moreover, the law is clear and PSEG concedes that RP § 12-111 does not permit collection of all information necessary for PPRP's assessments. In *Mackie v. Mayor and Com'rs of Town of Elkton,* 265 Md. 410 (1972), the Supreme Court of Maryland (then the Court of Appeals) held that RP § 12-111 does not extend to the geotechnical studies requested by PPRP, or any other invasive studies. In the more than fifty years since *Mackie* was decided, the General Assembly has not amended RP § 12-111(a) to permit invasive surveys. If there was an intent for RP § 12-111(a) to apply necessarily to all instances in which the PPRP required information, the General Assembly certainly would have amended the statute to permit invasive surveys. The General Assembly, in fact, amended RP § 12-111 to provide special rights to the State Highway Administration ("SHA") and the Maryland Transit Authority ("MTA"), by adding subsection (g) in a 1981 amendment. **Exhibit 5**. In contrast to subsection (a), which does not permit soil boring and excavation, subsection (g) permits the SHA and MTA and their "consultants" to "enter upon private property to conduct environmental and engineering studies, including soil boring and excavation." PSEG, of course, is not part of SHA or MTA.

analysis. In 1984, the General Assembly amended Title 3, Subtitle 3 of the Natural Resources Article – the subtitle that governs PPRP – to give PPRP all the access rights that might be necessary to perform its responsibilities. **Exhibit 4**. The amendment added NR § 3-305(f), which gives "the [Department of Natural Resources ('DNR')], its agents, employees, and contractors" the right to "enter upon private property to collect data and otherwise conduct environmental and engineering studies related to … potential overhead transmission lines in excess of 69,000 volts," including "the installation of meteorological testing equipment, biological sampling, soil borings, and installation of test wells." An "electric company" may make a "written request" to DNR "setting out the nature, extent, and duration of the work to be done," but only the DNR may conduct the studies. In no event does NR § 3-305(f) extend to private transmission line developers independently accessing private property. Nevertheless, in this provision, the General Assembly provided a specific mechanism for DNR and PPRP to obtain the information they need to perform their duties under NR § 3-306, as well as the limits of that mechanism. PSEG's assertion that "[n]one of this information … could be gathered" is false. ECF 65-1 at 17-18. The issue is not that the information cannot be gathered, but that PSEG is not satisfied with the mechanism that was provided by the General Assembly.

This Court cannot and should not stretch RP § 12-111 to solve a supposed problem that the General Assembly solved many years ago. To the extent PPRP has been unwilling to gather the information, PSEG can raise that issue with PPRP, with the PSC, or with the General Assembly. But that would not be a legitimate reason to distort RP § 12-111 based on the inaccurate assumption that the legislative framework does not provide a mechanism to gather the information.

### iii. Principles of statutory construction dictate that RP § 12-111 may not be invoked by an entity that does not have the power of eminent domain, regardless of an asserted need to access properties.

PSEG has urged a "harmonized reading of NR § 3-306, PUA § 7-207, and RP § 12-111," but the plain language and the history of the adoption of these statutes suggests a different harmony than what PSEG suggests. First, under well-established principles of statutory construction, "[w]hen the statutory language is clear, [a court] need not look beyond the statutory language to determine the Legislature's intent. *Scriber v. State*, 437 Md. 399, 410 (2014) (quoting *Stoddard v. State*, 395 Md. 653, 661 (2006)). "If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, [the court] will give effect to the statute as it is written." *Id.* The language from RP § 12-111(a) – "having the power of eminent domain" – grammatically is a *present* participle, the common and everyday meaning of which is that the entity must have the power of eminent domain in the present. It cannot mean "does not have" or "might someday have," which is the effect of PSEG's argument. The language from PU § 7-207(b)(3)(v) – "[o]n issuance of a [CPCN]" – has the common and everyday meaning that the right to acquire property by condemnation is granted at the time the CPCN is issued, not before. It cannot mean "before issuance," but again that is the effect of PSEG's argument. The plain language is clear and the inquiry should end. PSEG has not been issued a CPCN, does not have the power of eminent domain, and cannot invoke the access rights in RP § 12-111.

Even if the language was not clear, the histories of NR § 3-306, PU § 7-207, and RP § 12-111 also indicate that RP § 12-111 is limited to entities that already have the power of eminent domain. RP § 12-111 was enacted many years ago and has only ever applied to governmental and other entities already having the power of eminent domain. The relevant language in RP § 12-111(a) is substantially unchanged since 1963. *Mackie*, 265 Md. at 413 (quoting substantially

identical language and noting that it was enacted in 1963). When the General Assembly created the PPRP and tasked PPRP with performing an assessment in connection with a CPCN application, it did not amend RP § 12-111. In 1984, however, the General Assembly gave PPRP express authority to access private property to gather information in support of this assessment, but made no amendments to RP § 12-111 to give this authority to private entities. **Ex. 5**; NR § 3-305(f). Likewise, when the General Assembly expanded development of electric transmission lines to out of state developers, it expressly provided that such developers would have the power of eminent domain only "[o]n issuance" of a CPCN. PU § 7-207(b)(3)(v). The General Assembly made no amendments to RP § 12-111 to provide such developers with access *before* issuance of a CPCN.

Nothing in the text or legislative history of NR § 3-306, PU § 7-207, and RP § 12-111 supports the notion that the General Assembly intended to provide access rights to entities that had not been issued a CPCN. Indeed, the statutory language suggests that the General Assembly made a deliberate legislative decision to balance private property rights against the State's interests in public utility projects by requiring a CPCN *before* an entity could access private property. Unless and until the private entity receives a CPCN from the PSC, the private entity is essentially a stranger to the State of Maryland and vested with no authority to act on the State's behalf. It was not unreasonable for the General Assembly to task the PSC with determining whether to grant the power of eminent domain. Nor was it unreasonable in 1963 (or at any time since) for the General Assembly to limit the applicability of RP § 12-111 to entities "having the power of eminent domain."

Even if the failure to provide access rights to such entities prior to a CPCN is perceived as an omission from the statute, the Court is not permitted to fill the perceived gap. Maryland's highest court has explained: "Even though a certain provision, which has been omitted from a

statute, appears to be within the obvious purpose or plan of the statute, and to have been omitted merely by inadvertence, nevertheless, the court is not at liberty to add to the language of the law; and the court must hold that the Legislature intended to omit the provision, however improbable that may appear in connection with the general policy of the statute." *Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins, LLC*, 412 Md. 308, 327 (2010) (quoting *Rogan v. B & O R. Co.*, 188 Md. 44, 54 (1947)). Similarly, the United States Supreme Court has explained: "If courts felt free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal, we would risk failing to 'tak[e] ... account of' legislative compromises essential to a law's passage and, in that way, thwart rather than honor 'the effectuation of congressional intent.'" *New Prime Inc. v. Oliveira*, 586 U.S. 105, 120–21 (2019) (quoting *Board of Governors, FRS v. Dimension Financial Corp.*, 474 U.S. 361, 374 (1986)). Under both Maryland and federal law, PSEG cannot appeal to policy, divorced from the actual text of RP § 12-111. As the Court in *Rosemann* noted, "[i]f the situation brought to light by this case is an oversight, it is a matter for the Legislature to correct," not the Court. *Rosemann*, 412 Md. at 327.

Finally, the longstanding principle that "statutes of eminent domain are to be strictly construed" applies to RP § 12-111. *Davis v. Bd. of Educ. of Anne Arundel Cnty.*, 166 Md. 118 (1934). This principle cannot be brushed aside by claiming that RP § 12-111 is only about access and not about eminent domain. RP § 12-111 is part of the 1963 recodification entitled "Eminent Domain," and therefore is a statute of eminent domain. **Exhibit 5** at 1. Access and eminent domain are inextricably linked by the express language of the statute, which provides access only to those entities "having the power of eminent domain." RP § 12-111(a). Maryland courts have held that "[t]he right to enter property pursuant to § 12–111 is a 'key element' in the exercise of the power of eminent domain." *King*, 52 Md. App. at 122. This statute, like all statutes of eminent domain

must be strictly construed rather than stretched to conform to some flawed conception of what the General Assembly must have intended.

What the General Assembly intended is clear from the language of the statutes themselves. Access rights under RP § 12-111(a) are available only to those entities "having the power of eminent domain." Under the public utilities article, an electric transmission line developer has the power of eminent domain only "[o]n issuance of a [CPCN]." PU § 7-207(b)(3)(v). To the extent PPRP needs access to fulfil its responsibilities, the General Assembly has provided PPRP with such access rights, but these rights do not extend to private entities. NR § 3-305(f). This Court is required to give effect to the plain meaning of these statutes and dismiss PSEG's Petition in this case.

### iv.  The reference to future public use in RP § 12-111 does not indicate that PSEG has the power of eminent domain.

PSEG suggests that the fact that RP § 12-111 permits surveys to "obtain information relating to the acquisition or *future* public use of the property" (emphasis added) somehow suggests that the statute must extend to entities who do not currently have the power of eminent domain. Relying on this Court's previous opinion, PSEG suggests that requiring it to have already been granted the power of eminent domain "would 'render meaningless the reference to obtaining information for a future acquisition or future public use of the property.'" ECF 65-1 at 19 (quoting *PSEG Renewable Transmission LLC v. Arentz Fam., LP*, No. 25-CV-1235-ABA, 2025 WL 1725814, at *12 (D. Md. June 20, 2025)). This argument, however, ignores the history and purpose of RP § 12-111, incorrectly assuming that it was designed exclusively for situations in which a foreign developer seeks to develop an electric transmission line.

In Maryland, foreign developers could not develop electric transmission lines until the General Assembly amended PU § 7-207 in 2015, and could not be granted the power of eminent

domain until another amendment to the same statute was passed in 2017, as noted above. The statute that is now RP § 12-111 has existed for more than a hundred years, having been first enacted in 1916. **Exhibit 7** (1916 Bill). From the beginning it was designed to allow Maryland governmental entities, which already had the power of eminent domain, to make surveys to assess proposed (that is, future) public works projects. *Id*.

In 1963, more than fifty years before private transmission line developers were permitted to operate in Maryland, the statute that is now RP § 12-111 was amended as part of a recodification of Maryland's eminent domain law. *See* **Ex. 6**. The 1963 amendment extended the statute beyond governmental entities, to cover "any body politic or corporate having the power of eminent domain." *Id*. at 19 (noted as p. 288). This amendment contained the language that is still in effect in RP § 12-111 and gave entities "having the power of eminent domain" the right to make surveys "relating to the acquisition or future public use of the property or for any governmental report, undertaking or improvement."

The language of RP § 12-111 applied to and has been used by numerous governmental and other entities *already* having the power of eminent domain for a hundred years. For example, the statute has been used by SHA to evaluate various proposed roadway projects, and during that entire time, SHA already had the power of eminent domain *before* it invoked RP § 12-111. The statute certainly has not been made meaningless by the requirement that an entity must have the power of eminent domain in order to pursue pre-condemnation access.

This Court suggested in *Arentz*, 2025 WL 1725814, at *14, that the General Assembly could not possibly have intended to make an entity wait for access rights until it "could begin actual condemnation proceedings." But that is precisely the normal state of affairs for all entities that have used the statute for more than a hundred years. The statute has always been used by

16

entities who already had the power of eminent domain, and thus could have begun actual condemnation proceedings. There is no evidence to support the assertion that the General Assembly did not intend exactly what the plain language indicates – that it applies to entities "having the power of eminent domain." PSEG's interpretation renders these words meaningless because it extends RP § 12-111 to entities that *do not have* and *may never have* the power of eminent domain.

### v.  PSEG is not an agent of PPRP, DNR, or any other State agency.

PSEG's alternative contention in footnote 5 (ECF 65-1 at 21), that it can force entry onto private land "on behalf of instrumentalities of the State" has no basis in fact or law. There are no facts or allegations to support a contention that PSEG is acting as an implicit agent of DNR or PPRP in seeking access. *See, e.g., Broadway Servs., Inc. v. Comptroller of Maryland*, 478 Md. 200, 216 (2022) (implicit agency requires court to examine three factors: "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent."). None of these factors exist here, as PSEG cannot alter DNR's legal relations, PSEG is not acting primarily for the benefit of DNR, and DNR is not controlling PSEG.

The case cited by PSEG involving the Baltimore Development Corporation ("BDC") presents a contrast that further demonstrates PSEG's lack of any agency relationship. *City of Baltimore Dev. Corp. v. Carmel Realty Assocs.*, 395 Md. 299 (2006). The court explained that "the BDC is subject to substantial control by the City because of how closely the two are intertwined." *Id.* at 336. Even then, the court expressly held that BDC had no power of eminent domain: "The BDC's involvement in the [eminent domain] process is through, and only through, the City. The power of eminent domain *adheres* to the City's *sovereignty* generally, and by reason of the

constitutional provisions. BDC has no independent source of power in the urban renewal process." *Id*. at 317 n. 13 (emphasis in original). In contrast to the BDC and the City of Baltimore, PPRP and PSEG have no relationship other than PPRP's statutory obligation to provide "an *independent* environmental and socioeconomic project assessment" of the CPCN application submitted by PSEG. NR § 3-306(b)(1)(i) (emphasis added).

Finally, PSEG's citation to this Court's previous opinion in *Arentz,* 2025 WL 1725814, at *12, does not support a conclusion that PSEG has been "acting on behalf of" PPRP as those words are used in RP § 12-111(a). This Court held that legal principles of agency are "beside the point for purposes of interpreting § 12-111," without citation to legal authority and without identifying any alternative legal principles that should have been applied to interpret the words "acting on behalf of." *Arentz*, 2025 WL 1725814, at *13. Nor did the Court address the fact that, if PSEG was "acting on behalf of" PPRP, then RP § 12-111(c) would make PPRP liable for damages caused by PSEG. The plain text of RP § 12-111(c) imposes liability on the entity on whose behalf the engineer or surveyor is acting; if the engineer or surveyor is deemed to be acting on behalf of PPRP, as suggested by the Court in *Arentz*, then PPRP would be liable for damages. There is no indication in the text of RP § 12-111 or any of the statutory history that the General Assembly intended to make PPRP liable for the actions of private entities simply because PPRP asked those entities to collect information for analysis, yet that is the result of the Court's holding.

### vi. Federal law cannot give PSEG the power of eminent domain.

PSEG has asserted that it is already an entity "having the power of eminent domain" because it "will be subject to regulation by FERC once its CPCN is obtained, [thus] it will be a 'public utility' with condemnation authority as defined under federal and Maryland law." ECF 65-1 at 21. There is no legal or factual support for this assertion. Neither the potential but uncertain

18

future regulation by FERC nor the approvals already received from PJM and FERC are sufficient to grant the power of eminent domain to PSEG. PSEG's Designated Entity Agreement (ECF 3-1), PJM's submission to FERC for approval of Designated Entity Agreement (ECF 3-2), and the FERC order approving filing of Designated Entity Agreement (ECF 3-3) do not even mention eminent domain.

Nor could PJM or FERC confer upon PSEG *Maryland's* power of eminent domain. Federal regulation of interstate transmission and sale of electric energy for ultimate distribution to the public should "extend only to those matters which are not subject to regulation by the States." 16 U.S.C. § 824(a). *See also* FERC Order No. 1000, *Final Rule, Transmission Planning and Cost Allocation by Transmission Owning and Operating Public Utilities* 136 FERC P 61051 (July 21, 2011) at ¶ 107 (Acknowledging "longstanding state authority" over "matters relevant to siting, permitting, and construction" of transmission lines, and explaining that rule "in no way involves an exercise of authority over those specific substantive matters traditionally reserved to the states, including… authority over such transmission facilities."). Thus, for an electric transmission line, the power of eminent domain must come from the State of Maryland, not from FERC or any other federal source. PJM contracts and FERC approvals, therefore, cannot and do not establish that PSEG has the power of eminent domain delegated by the State of Maryland.

### vii. The Maryland Circuit Court opinion in *Transource* does not support PSEG's interpretation.

The opinion from the Circuit Court for Harford County in *Transource Maryland, LLC v. Scott* (ECF 65-5) is not persuasive and cannot override the plain language of PU § 7-207 and RP § 12-111. In the opinion, then Judge Eaves appears to have determined that Transource already had the power of eminent domain because it was "an entity that is a public service utility." ECF 65-5 at 8. It appears that the judge determined that Transource was a "public utility" by incorrectly

19

assuming that Transource was an "electric company" under Section 1-101 of the Public Utilities Article. In the Public Utilities Article, "'Electric company' means a person who physically transmits or distributes electricity in the State to a retail electric customer." Md. Code Ann., Pub. Util. § 1-101(i)(1). PSEG does not transmit or distribute electricity in Maryland to retail electric customers. Therefore, PSEG could not have survived the first part of Judge Eaves' two-part analysis. ECF 65-5 at 8.

Starting with the incorrect assumption that Transource was an electric company already having the power of eminent domain, the court decided that Transource could invoke RP § 12-111. Here, PSEG is not an electric company, does not have the power of eminent domain and cannot invoke RP § 12-111. The circuit court's analysis concerning timing of access is not persuasive because that analysis cannot create a power of eminent domain here, where PSEG does not already have that power.

### viii.  Cases from other jurisdictions do not support PSEG's interpretation of the Maryland statute.

The out-of-state cases cited by PSEG further demonstrate why PSEG has no authority to force entry onto private property in Maryland. The two Virginia cases – *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 801 S.E.2d 414 (2017), and *Barr v. Atl. Coast Pipeline, LLC*, 295 Va. 522, 815 S.E.2d 783 (2018) – were interpreting a statute that expressly gave access rights to "[a]ny firm, corporation, company, or partnership, organized for the bona fide purpose of operating as a natural gas company as defined in 15 U.S.C. § 717a, as amended." Va. Code Ann. § 56-49.01. In both cases, it was undisputed that the company met the definition of "natural gas company" under the federal statute. *See Barr*, 295 Va. at 532, 815 S.E.2d at 788 ("it is undisputed that ACP meets the definition of a natural gas company under 15 U.S.C. § 717a"); *Palmer*, 293 Va. at 579, 801 S.E.2d at 417 ("Palmer does not contest that ACP fits within this definition."). Thus, in Virginia,

all natural gas companies meeting the federal definition are expressly granted access rights to "make such examinations, tests, hand auger borings, appraisals, and surveys." In contrast, Maryland requires that a private transmission line developer must be issued a CPCN before it has the power of eminent domain. PU § 7-207(b)(3)(v). The Maryland statute does not grant condemnation power to companies that meet some federal definition.

In *Nexus Gas Transm., L.L.C. v. Sprague*, 2016-Ohio-4901, 2016 WL 3654532 (Ohio App. 2016), the court held that a natural gas transporter company was authorized to access property pursuant to a statute that expressly stated: "If a company is organized … for storing, transporting, or transmitting water, natural or artificial gas …; then such company may enter upon any private land to examine or survey lines for its tubing, pipes, conduits, poles, and wires, … and may appropriate so much of such land, or any right or interest therein, as is deemed necessary for the laying down or building of such tubing, conduits, pipes…." Ohio Rev. Code Ann. § 1723.01. Thus, the statute expressly allowed *any* natural gas transporting company access to private property, based on the purpose for which the company was organized, and not based upon the issuance of a CPCN.

If anything, these cases demonstrate that a private entity cannot compel access to private land without express statutory authority. Those courts expressly based their decisions on statutes granting eminent domain authority. *Palmer*, 293 Va. at 577-79, 801 S.E.2d at 416-17 (relying on § 56–49.01); *Barr*, 295 Va. at 531, 815 S.E.2d at 787 ("the requisite legislative authority is found in Code § 56-49.01(A)"); *Nexus Gas*, 2016 WL 3654532 at *3 (relying on § 1723.01). There is no such statute in Maryland; Maryland requires CPCN issuance before an entity may have the power of eminent domain. PU § 7-207(b)(3)(v).[9]

---

[9] *Prop. Rsrv., Inc. v. Superior Ct.,* 1 Cal. 5th 151, 165, 375 P.3d 887, 892 (2016), did not even address the issue of private companies attempting to force access to private land. There, the California Department of Water Resources, a

**B.  This Court Should Decline to Exercise Jurisdiction Under *Burford v. Sun Oil, Co.*, Because Whether PSEG Has The Power of Eminent Domain (And Thus, Access Rights Under RP § 12-111) Is A Complex Question of State Law.**

In *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943), the Supreme Court held that federal courts have the discretion to decline to exercise jurisdiction with "proper regard for the rightful independence of state governments in carrying out their domestic policy." "*Burford* permits abstention when federal adjudication would 'unduly intrude' upon 'complex state administrative processes' because either: (1) 'there are difficult questions of state law ... whose importance transcends the result in the case then at bar'; or (2) federal review would disrupt 'state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361–63 (1989) ("*NOPSI*")).

"*Burford* is concerned with protecting complex state administrative processes from undue federal interference." *NOPSI*, 491 U.S. at 362; *see Bath Mem'l Hosp. v. Maine Health Care Fin. Comm'n*, 853 F.2d 1007, 1012 (1st Cir.1988) (*Burford* abstention is invoked when the exercise of federal jurisdiction risks "turning the federal court into a forum that will effectively decide a host of detailed state regulatory matters, to the point where the presence of the federal court, as a regulatory decision-making center, makes it significantly more difficult for the state to operate its regulatory system."). Indeed, "the 'Supreme Court has admonished the federal courts to respect the efforts of state governments to ensure uniform treatment of essentially local problems.'" *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008) (quoting *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 719 (4th Cir. 1999)); *Public Util. Comm'n of Ohio v. United Fuel Gas*

---

public agency of the State of California, was the entity seeking pre-condemnation access. Although the opinion discusses the reasons a legislature might provide pre-condemnation access to a public agency, the case does not support expanding pre-condemnation access to private entities that do not have the power of eminent domain.

*Co.*, 317 U.S. 456, 468 (1943) ("The federal courts should be wary of interrupting the proceedings of state administrative tribunals by use of the extraordinary writ of injunction.").

There is no "formulaic test for determining when dismissal under *Burford* is appropriate." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 727 (1996). The Court must consider "the federal interests in retaining jurisdiction over the dispute and the competing concern for the 'independence of state action,'" to discern whether the "State's interests are paramount and that a dispute would best be adjudicated in a state forum." *Id.* at 728. While an "extraordinary and narrow exception" to the Court's duty to adjudicate controversies, "[i]t is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813–14 (1976).

Here**,** the Court cannot decide whether PSEG has access rights under RP § 12-111 without first deciding whether PSEG has the power of eminent domain. Both questions arise entirely under state law, which gives the PSC "*exclusive* jurisdiction" over the construction of transmission lines in the state and, consequently, whether PSEG should get the power of eminent domain. PU § 2-113; *Potomac Elec. Power Co. v. Montgomery Cnty.*, 80 Md. App. 107, 115, 560 A.2d 50, 54 (1989) (emphasis added) *aff'd sub nom. Howard Cnty. v. Potomac Elec. Power Co*., 319 Md. 511, 573 A.2d 821 (1990). Indeed, eminent domain is a quintessential matter of state law, "intimately" linked to the state's "sovereign prerogative." *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959). *Burford* abstention is appropriate under those circumstances. *See MLC Auto*, 532 F.3d at 282–83 (court did not abuse its discretion in abstaining under *Burford*, where "Leith's sole federal claim is entirely dependent upon resolution of its state law claim in its favor."); *Johnson v. Collins Ent. Co.*, 199 F.3d 710, 719–20 (4th Cir. 1999) (district court should have abstained,

23

because "[t]he exercise of federal equitable discretion in this case supplanted the legislative, administrative, and judicial processes of South Carolina and sought to arbitrate matters of state law and regulatory policy that are best left to resolution by state bodies."); *La. Power & Light*, 360 U.S. at 29  ("The special nature of eminent domain justifies a district court judge, when his familiarity with the problems of local law so counsels him, to ascertain the meaning of a disputed state statute from the only tribunal empowered to speak definitively – the Courts of the State under whose statute eminent domain is sought to be exercised – rather than himself make a dubious and tentative forecast."); *Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 956 (3d Cir. 1993) ("*Burford* abstention is usually applied to state regulatory matters such as …applying state eminent domain procedures" (citation omitted)); *Rucci v. Cranberry Twp., Pa.*, 130 F. App'x 572, 577 (3d Cir. 2005) (district court did not abuse its discretion in abstaining from challenges to state's eminent domain procedures)

This Court has acknowledged that these disputes "are largely governed by state law and administered by state agencies," and that the state's regulatory scheme "counsels in favor of abstention." *Arentz*, 2025 WL 1725814, at *16. Likewise, "the fact that PSEG's claim arises in the context of a proceeding that, if PSEG prevails, may result in the exercise of eminent domain, is another factor that arguably militates in favor of abstention." *Id.* While the Court declined to invoke the *Burford* doctrine in *Arentz*, finding the issues raised to be "discrete and narrow," *id.* at *17, the instant case reveals just how sweeping PSEG's plans truly are. *Arentz* and *Alvi* authorized PSEG to enter 318 landowners' properties in the state, for the purpose of conducting studies that PSEG claims are necessary for its CPCN application. *PSEG Renewable Transmission LLC v. Alvi Props., LLC,* No. 25-CV-2296-ABA, 2025 WL 2684868, at *1 (D. Md. Sept. 2, 2025); *Arentz*, 2025 WL 1725814, at *16. Now PSEG seeks entry onto property owned by 98 additional landowners, all

before the PSC has concluded that PSEG's application was incomplete in the first place, let alone whether PSEG can ultimately construct a transmission line in Maryland at all. Thus, this is a "narrow and extraordinary" case warranting *Burford* abstention.[10]

Because PSEG's access rights under RP § 12-111 are "entangled in a skein of state law that must be untangled before the federal case can proceed," *McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668, 674 (1963), *Burford* abstention should apply here.

### C. This Case Should Also Be Dismissed For Failure to Join A Necessary Party Under Fed. R. Civ. P. 12(b)(7).

PSEG failed to join all necessary and indispensable parties as required under Fed. R. Civ. P. 19. Again, PSEG first obtained authorization to enter 117 landowners' properties along the proposed route of the MPRP, and in so doing, it "disclaimed any intention to seek an order in this case directed at any property owner who has not been named and served as a respondent in this case." *Arentz*, 2025 WL 1725814, at *18. Yet, PSEG elected not to include the 98 Respondents from the instant case in either *Arentz or Alvi*, as well as other landowners in the path of the MPRP who are citizens of New Jersey, because inclusion of the latter group would have frustrated federal diversity jurisdiction. The latter group of individuals is still not named in the instant action.

One such landowner is Congxin Xie ("Ms. Xie"), a citizen of the state of New Jersey and the owner of the property known as 2038 Littlestown Pike, Westminster, Maryland 21158 (the

---

[10] There is no federal nexus or preemption to warrant a different conclusion. The Federal Power Act declares that Federal regulation of interstate transmission and sale of electric energy for ultimate distribution to the public "extend[s] only to those matters which are not subject to regulation by the States." 16 U.S.C. § 824(a); *but see New York v. F.E.R.C.*, 535 U.S. 1, 20–24 (2002). Because the construction of transmission lines in Maryland is subject to regulation by the PSC, PU § 2-113; *Potomac*, 80 Md. App. at 115, 560 A.2d at 54, FERC has no jurisdiction over those matters. *See* FERC Order No. 1000, *Final Rule, Transmission Planning and Cost Allocation by Transmission Owning and Operating Public Utilities* 136 FERC P 61051 (July 21, 2011) at ¶ 107 (Acknowledging "longstanding state authority" over "matters relevant to siting, permitting, and construction" of transmission lines, and explaining that rule "in no way involves an exercise of authority over those specific substantive matters traditionally reserved to the states…").

"Littlestown Pike Property"). **Exhibit 8**, Declaration of Congxin Xie Regarding 2038 Littlestown Pike at ¶¶ 1-3. The Littlestown Pike Property is in Carroll County, Maryland, directly in the path of the MPRP, and is marked as the proposed site of two preliminary H-frame transmission structures. *Id.* ¶¶ 3-5. In 2024, PSEG contacted Ms. Xie and requested access to the Littlestown Pike Property for the purpose of conducting surveys and other studies of the Property related to the MPRP. *Id.* at ¶ 6. Ms. Xie declined PSEG's request. *Id.* at ¶ 7.

PSEG apparently omitted Ms. Xie as a respondent from the instant action for the same reason she was omitted from the prior action: because her inclusion would frustrate diversity jurisdiction. The only possible basis for subject matter jurisdiction in this case is diversity of citizenship under 28 U.S.C. § 1332(a)(1). To establish diversity jurisdiction, the parties must be completely diverse; the petitioner may not share state citizenship with any of the respondents. *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). PSEG is a Delaware limited liability company with its principal place of business in Newark, New Jersey, ECF 2 at 1, so it is a citizen of New Jersey for purposes of diversity jurisdiction, *Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir.2004)), and diversity jurisdiction would be destroyed if PSEG named any citizen of New Jersey as a respondent.

Even though Ms. Xie denied PSEG's request to enter the Littlestown Pike Property for the purpose of conducting the same surveys and studies PSEG seeks to conduct through the prior and instant actions, Ms. Xie was not named as a respondent in either case. PSEG's conscious decision to exclude Ms. Xie as a respondent is a clear effort to cherry-pick respondents in order to obtain federal diversity jurisdiction and avoid filing suit in Maryland state court as contemplated by RP § 12-111.

Fed. R. Civ. P. 12(b)(7) provides for dismissal of an action where a litigant fails to join a party as required under Fed. R. Civ. P. 19, which sets forth a two-step inquiry for determining whether a party should be joined in a case. First, the court must determine whether the party is necessary to the action under Rule 19(a). *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000). If the court determines that the party is necessary, it must be joined "if feasible." Fed. R. Civ. P. 19(a). If the party cannot be joined, the court must determine whether the proceeding can continue in the party's absence, *i.e.*, whether the party is "indispensable" to the action under Rule 19(b). *Nat'l Union*, 210 F.3d at 249, *see also Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917-918 (4th Cir. 1999). If the party is both necessary and indispensable but cannot be joined without destroying complete diversity of citizenship, dismissal is appropriate. *Nat'l Union*, 210 F.3d at 250, *see also Teamsters*, 173 F.3d at 918. Although a "drastic remedy," "a decision whether to dismiss must be made pragmatically, in the context of the substance of each case, rather than by a procedural formula." *See id.* (quoting *Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 112 n. 10 (1967)) (internal quotation marks omitted).

A party is a "necessary party" under Fed. R. Civ. P. 19(a)(1) if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
    (i)      as a practical matter impair or impede the person's ability to protect the interest; or
    (ii)      leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Here, Ms. Xie is a necessary party to this case under Fed. R. Civ. P. 19(a)(1)(B)(i). Her ownership interest in the Littlestown Pike Property is directly related to the subject matter of this

action, because it is in the path of the MPRP and is the proposed site for two H-frame transmission structures. *See* **Ex. 8** at ¶ 5. Furthermore, she declined PSEG's request to enter the property and conduct the same surveys and tests it seeks to force upon the *Arentz* respondents, and the Respondents named here.  Disposing of this action in Ms. Xie's absence would impair or impede her ability to protect her ownership interest in the Littlestown Pike Property. PSEG's actions in bringing the instant case leave little doubt that it will use the *Arentz* Order and any Order obtained in this case as persuasive authority to convince other courts to force access to Ms. Xie's property, which this Court has acknowledged. *Arentz*, 2025 WL 1725814, at *18. Accordingly, Ms. Xie is a necessary party to this action.

If joinder of a necessary party is appropriate but not feasible under Rule 19(a)(1), then the court must determine whether "in equity and good conscience" the case can proceed without the absent party or should be dismissed under Rule 12(b)(7). Fed. R. Civ. P. 19(b). Rule 19(b) directs the court to consider the following factors when determining whether a party is indispensable:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping the relief; or
>     (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

The first point of consideration under this Rule 19(b) addresses the same concerns raised by Rule 19(a)(1)(B). Again, if this action were to proceed without Ms. Xie, she could be deprived of her property rights because she is situated in a similar position to the Respondents. As to the second factor, the court cannot tailor its relief to lessen or avoid the prejudice to Ms. Xie, because a *third* Order in PSEG's favor will inevitably increase the likelihood PSEG will gain access to the

Littlestown Pike Property in the future. As the Court acknowledged, such decisions may be cited as "persuasive authority" in a proceeding against Ms. Xie. *Arentz*, 2025 WL 1725814, at *18. While the possible prejudice to Ms. Xie caused by creating such authority *one* time may not have justified dismissal of that case, *id.*, a third order Federal opinion will compound that possibility.. "[T]he determination whether to proceed will turn upon factors that are case specific, which is consistent with a Rule based on equitable considerations," including the "consequences for the persons and entities affected by the judgment." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 862–63 (2008). Based on the significant practical consequences this case will have on Ms. Xie, if PSEG prevails, the action cannot proceed in this Court "in equity and good conscience."

Accordingly, this case should be dismissed for failure to join a necessary party under Fed. R. Civ. P. 12(b)(7).

## V.    CONCLUSION

For the reasons set forth above, the Court should dismiss this action.

Respectfully submitted,

*/s/ Harris W. Eisenstein*
Harris W. Eisenstein (Fed. Bar No. 29694)
David M. Wyand (Fed. Bar No. 23413)
Lauren M. McLarney (Fed. Bar No. 20982)
Rosenberg Martin Greenberg, LLP
25 S. Charles Street 21st Floor
Baltimore, Maryland 21201
Phone: (410) 727-6600
Fax: (410) 727-1115
heisenstein@rosenbergmartin.com
dwyand@rosenbergmatin.com
lmclarney@rosenbergmartin.com

*Attorneys for Respondents*
